**SO ORDERED.**

**SIGNED September 28, 2006.**



_____
GERALD H. SCHIFF
UNITED STATES BANKRUPTCY JUDGE
_____

```
             UNITED STATES BANKRUPTCY COURT
              WESTERN DISTRICT OF LOUISIANA


IN RE:

MARK EVAN FREEMAN                          CASE NO. 05-51042

    Debtor                                 CHAPTER 7
-----------------------------------------------------------------
EAGLE ROCK DEVELOPMENT, LLC

    Plaintiff

VERSUS                                     ADV. CASE NO. 05-5069

MARK EVAN FREEMAN

    Defendant
-----------------------------------------------------------------
                    REASONS FOR DECISION
-----------------------------------------------------------------
```

Mark Evan Freeman ("Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code[1] on February 25,

_____
[1]Title 11, United States Code.  References herein to sections of the Bankruptcy Code are shown as "section ____."

2005. The instant complaint was filed by Eagle Rock Development, LLC ("Eagle Rock"), seeking a determination of the dischargeability of a debt owed by the Debtor to Eagle Rock. A trial on the complaint was held on August 11, 2006. After hearing testimony and receiving evidence, the matter was taken under advisement.

## JURISDICTION

The case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

In July of 1999, Guy Devillier became interested in opening a health club as a franchisee of Lady of America Health Clubs. Mr. Devillier engaged the services of Mark Camara, a leasing agent to secure and negotiate space for the health club. Eagle Rock developed the Carriage Crossing Shopping Center in Baton Rouge, Louisiana. Steve Legendre was Eagle Rock's leasing agent. Mr. Camara contacted Mr. Legendre and negotiations began.

Page 2

After these negotiations began, Mr. Devillier solicited the involvement of the Debtor in the venture. The Debtor testified that he was interested in being involved in the venture, though not necessarily as a partner. Mr. Devillier went to the Debtor's home on the evening of August 25, 1999, to discuss the venture. They went to the Lady of America website to obtain information. In order to obtain necessary information, the website requested certain financial information. The Debtor filled out the online form in order to obtain the information. The form contained certain financial and personal information about the Debtor. From that information, Lady of America created a document called a Franchisee Application. Mr. Camara received a copy of the Franchisee Application from Lady of America and believed that the Debtor was now involved as a party to the potential venture. Mr. Camara forwarded a package of information including the Franchisee Application to Mr. Legendre along with a proposal for a lease between Mr. Devillier and the Debtor as lessees and Eagle Rock as lessor.

Mr. Devillier and the Debtor eventually formed GME, LLC for the purpose of operating a Lady of America spa. On December 18, 1999, GME, LLC and Eagle Rock entered into a lease of space at the Carriage Crossing Shopping Center. In addition to the lease, both Mr. Devillier and the Debtor signed personal guarantees. The

venture was unsuccessful and, after litigation on the personal guarantees, Eagle Rock now holds a judgment against the Debtor.

## LAW AND ANALYSIS

Eagle Rock argues that the debt owed to it by the Debtor is nondischargeable pursuant to section 523(a)(2)(B).  Simply put, Eagle Rock asserts that some of the information provided by the Debtor in the Franchisee Application was materially false and that it relied upon such information in entering into the lease with GME.  The Debtor argues that he did not intend for the information he provided on the feedback form to be made available to third parties, that he did not authorize its use by others, nor was the information considered a financial statement.

Section 523(a)(2)(B) provides that an individual debtor is not discharged from any debt obtained by:

> (B)  use of a statement in writing—
>
> (i)  that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive; . . .

The requirements of section 523(a)(2)(B) are straightforward and not subject to diverse interpretation.  As was stated by the court in Byrd v. Mississippi, 207 B.R. 131, 134 (S.D. Miss. 1997):

Page 4

To prevail on its claim of nondischargeability, the [creditor] was required to prove each of the following elements:

1. the existence of a statement in writing;

2. the writing must be materially false;

3. the writing must concern the debtor's financial condition;

4. the creditor must have reasonably relied on the statement; and

5. the statement must be made or published with the intent to deceive.

First Interstate Bank of Nevada v. Greene (In re Greene), 96 B.R. 279, 282 (9th Cir. BAP 1989).

The Fifth Circuit, in Matter of Jordan, 927 F.2d 221, 224 (5th Cir. 1991)[2], defined a "materially false statement" for purposes of section 523(a)(2)(B):

A materially false statement is one that "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." In re Nance, 70 B.R. 318, 321 (Bankr. N.D. Tex.1987), citing In re Denenberg, 37 B.R. 267 (Bankr. D. Mass.1983). Further, in determining whether a false statement is material, a relevant although not dispositive inquiry is "whether the lender would have made the loan had he known the debtor's true situation." In re Bogstad, 779 F.2d 370, 375 (7th Cir.1985)

The determination of whether a debtor intended to deceive a creditor by the publication of the false financial statement most

---

[2]Although the Fifth Circuit later reversed its decision in Jordan, the reversal was predicated upon the appellate standard of review of determinations of reasonableness. Jordan presents an appropriate definition of "materially false statement."

Page 5

often must be gleaned from a myriad of circumstances. Because of the lack of a "smoking gun" in this type of situation, courts have recognized that this element of section 523(a)(2)(B) may be satisfied whenever the debtor either had knowledge of the falsity of the statement made the statement with reckless indifference to the truth.

> Reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine to produce the inference of intent [to deceive].

In re Miller, 39 F.3d 301, 305 (11th Cir.1994), quoted with approval in Matter of Norris, 70 F.3d 27, 30 (n. 12)(5th Cir. 1995).

And, recently, in Byrd v. Mississippi, 207 B.R. 131, 138 (S.D. Miss. 1997), the court said:

> In Highland Village Bank v. Bardwell (Matter of Bardwell), 610 F.2d 228, 229 (5th Cir.1980), the Fifth Circuit Court of Appeals held that "[o]btaining credit by a materially false financial statement will prevent bankruptcy discharge if the bankrupt either had knowledge of the falsity of the statement or demonstrated reckless indifference to the accuracy of the facts stated therein." (citations omitted). Intent to deceive may be inferred from the totality of the circumstances. Jordan v. Southeast National Bank (Matter of Jordan), 927 F.2d 221 (5th Cir.1991); FDIC v. Lefeve (In re Lefeve), 131 B.R. 588 (Bankr. S.D. Miss. 1991); see also Matter of Young, supra at 549 (intent to deceive may be inferred from use of a false financial statement to obtain credit).

The court believes that the key issue in the present case is the last element, whether the Debtor made or published the

Page 6

statement with the intent to deceive.  The court will not address the remainder of the elements as the court finds that Eagle Rock has failed to establish this key factor.  Eagle Rock has not proven two essential facts, namely that the Debtor knew the information contained in the online feedback was materially false or that the Debtor intended the information to be used by Eagle Rock.  Without these two facts, there is no evidence that the Debtor made or published the information with the intent to deceive.  The Debtor provided a reasonable explanation as to each allegedly false statement contained in the information he provided.  The court accepts that the Debtor truly believed the information he provided was correct.  The court further finds that the Debtor did not intend for the information he provided to be used as a financial statement which other parties would rely upon in reaching an agreement as to the lease.

For the foregoing reasons, the court finds that the complaint filed by Eagle Rock must be dismissed.  A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###

Page 7

05-05069 - #22  File 09/28/06  Enter 09/28/06 15:05:34  Main Document  Pg 7 of 7